UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NOVA CASUALTY COMPANY,

          **Plaintiff,**

vs.                                  **Case No. 8:04-CV-2085-T-27TGW**

DAVID ANDERSON, BENJAMIN MERCER,
and M. LEE CARLSON, individually and as personal
representative of the Estate of JUDITH
J. CARLSON, deceased,

          **Defendant.**

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is Plaintiff's Motion for Summary Judgment (Dkt. 42) and

Defendant M. Lee Carlson's Memorandum in Opposition (Dkt. 43).[1] Upon consideration, Plaintiff's

motion is **GRANTED**.

Nova Casualty Company filed this action seeking a declaratory judgment that it has no duty

to defend or indemnify David Anderson or Benjamin Mercer in an underlying wrongful death suit

filed by M. Lee Carlson against Anderson and Mercer in the Circuit Court for Pinellas County,

Florida. Construing the plain language of Nova's Commercial General Liability policy (hereafter

"CGL Policy" or "Policy") insuring Anderson's aluminum siding business, it is declared that neither

Anderson nor Mercer are "insureds" as defined by the Policy.  Nova, therefore,  has no duty to

indemnify David Anderson and has no duty to defend or indemnify Benjamin Mercer.

_____

[1] Default judgment has been entered against David Anderson and Benjamin Mercer (Dkts. 23, 33).

1

## Factual and Procedural Background

Nova issued a CGL Policy to David Anderson, the sole owner of J.M.A. Aluminum, Inc. In

relevant part, the Policy provides:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**
a.  We will pay those sums that the insured becomes legally obligated
to pay as damages because of "bodily injury" or "property damage" to which the
insurance applies. We will have the right and duty to defend the insured against any
"suit" seeking those damages. However, we will have no duty to defend the insured
against any "suit" seeking damages for "bodily injury" or "property damage" to which
this insurance does not apply.

(Dkt. 42, Ex. B, p. 1) (emphasis added).

**WHO IS AN INSURED**

1.    If you are designated in the Declarations as:
a.  An individual, you and your spouse are insureds, **but only with
respect to the conduct of a business of which you are the sole owner**.

* * *

2.    Each of the following is also an insured:
a.      Your "employees" . . . **but only for acts within the scope of
their employment by you or while performing duties
related to the conduct of your business**.

(Dkt.  42, Ex. B, p. 7) (emphasis added).

In the underlying action, Carlson alleges that Judith Carlson died from injuries she sustained

on October 5, 2001, when a motor vehicle owned and operated by Mercer rear-ended her motor

vehicle. (Dkt. 42, Ex. A, ¶ 8). Carlson alleges that on the night of the accident, Anderson provided

Mercer, a minor, with alcoholic beverages in connection with Anderson's employment of Mercer.

(Dkt. 42, Ex. A, ¶ 14). The coverage issue is whether Anderson and Mercer are "insureds" under the

2

terms of the Policy, giving rise to a duty to defend and/or indemnify on the part of Nova.[2]

According to Anderson, he employed Mercer to assist in his aluminum siding business for about a month.[3] (Anderson Depo., p. 9). Mercer was a "family friend" who Anderson has known for "six or eight years." (Anderson Depo., p. 11). Mercer testified that Anderson was a "friend of the family", who he knew for a couple of years prior to his employment. (Mercer Depo., p. 6).

Mercer worked every day from approximately 8:00 a.m. to 4:00 p.m.[4]  *Id.* at 9-10. According to Anderson, "[w]ork ends when you leave the job site. [Anderson] pay[s] him from when [they] leave [Anderson's] house till [they] leave the job site, meaning that they only got paid travel time one way." (Anderson Depo., p. 20). Mercer testified that he was compensated from the time he arrived at Anderson's house in the morning until they "were done at the job site." (Mercer Depo., p. 10). Anderson paid Mercer in cash on Fridays. (Anderson Depo., p. 20).

On the day of the accident, Mercer met Anderson at Anderson's house between 7:30 and 8:00 a.m. (Anderson Depo., p. 13). They drove together to the work site where they worked until 3:00 or 4:00 p.m. *Id.* at 14. Thereafter, Anderson picked up his pay check and paid Mercer in cash. (Mercer Depo., p. 12). According to Mercer, Anderson then stopped at a convenience store and

---

[2] It is important to distinguish between the coverage issue presented and Anderson's potential individual liability for his conduct, an issue not before this Court. While Anderson may likely be liable for his conduct as well as Mercer's, that does not, obviously, mean that Nova's CGL Policy necessarily provides coverage.

[3] For purposes of its motion for summary judgment, Plaintiff assumes *arguendo* that Mercer was Anderson's employee. (Dkt. 42, p. 14).

[4] According to Mercer, he worked Monday through Friday from approximately 5:00 a.m. until "it got dark". (Mercer Depo., p. 6).

bought beer for them with Mercer's money. (Mercer Depo., p. 12).[5]   Mercer testified that the beer was not purchased as part of his compensation. (Mercer Depo., p. 15). The two men then returned to Anderson's house where they "unloaded the truck and drank". *Id.*

Later that evening, Anderson rode with Mercer to pick up Mercer's paycheck from Mercer's other employer, Beef O' Brady's. (Anderson Depo., p. 16). On the way back to Anderson's house, Anderson purchased more alcohol. *Id;* Mercer Depo., p. 14. They continued to drink at Anderson's house. Later that evening, Mercer left Anderson's house in his own vehicle and rear-ended Judith Carlson, causing her death.

Anderson does not recall talking about work with Mercer while drinking at Anderson's house. (Anderson Depo., p. 20). Likewise, Mercer could not recall whether he discussed work with Anderson on the night of the accident. (Mercer Depo., p. 21).  Mercer testified that he did not usually discuss work with Anderson when Anderson purchased alcohol for him, but they discussed work approximately twenty-five percent of the time. (Mercer Depo., p. 21). According to Mercer, he might "ask . . . what work's next or whatever. [He'd] be saying where we going and he'd tell me, that's it." *Id.*

Anderson testified that in the ten years he operated his aluminum business it was not his practice to meet with employees after work. (Anderson Depo., p. 38).  There is no record evidence to the contrary. Anderson and Mercer both testified that Mercer was not required to drink with Anderson, was not compensated for that time, and could have left at any time. (Anderson Depo., p. 20; Mercer Depo., p. 15 *).*

---

[5] When asked whether he bought alcohol for Mercer, Anderson replied "I plead the Fifth Amendment".  (Anderson Depo., p. 19).

## Summary Judgment Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. The Court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997). Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court. Fed. R. Civ. P. 56.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## Discussion

Plaintiff seeks summary judgment, arguing neither Anderson nor Mercer meet the definition of "insured" as it relates to the underlying wrongful death action. Alternatively, Plaintiff argues it has no duty to defend or indemnify Anderson or Mercer because coverage is expressly excluded under Exclusion (g) of the Policy. As discussed in detail below, the undisputed facts are that the work day had ended when Mercer and Anderson left the job site, hours before the collision occurred which claimed the life of Judith Carlson. Anderson and Mercer were not engaged in business

5

activity when they were drinking and Mercer's negligent driving was not a business activity performed for the purpose of Anderson's insured business. Anderson and Mercer's drinking was a social activity as opposed to a business activity. Accordingly, neither Anderson nor Mercer were "insureds" according to the plain language of the Policy.

### Definition of Insured

1.   David Anderson

Plaintiff contends it has no duty to indemnify Anderson in the underlying lawsuit because Anderson's alleged wrongful conduct (providing Mercer, a minor, with alcohol) was not related to the conduct of Anderson's aluminum construction business, and in turn, does not fall within the Policy definition of "insured". On this record, this Court agrees.

"Insurance contracts are construed according to their plain meaning." *See Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, ___ So. 2d ____, 2005 WL 2296481, *3 (Fla. 2005) ("we must follow the guiding principle that this Court has consistently applied that insurance contracts must be construed in accordance with the plain language of the policy"). "[I]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous.' An ambiguous provision is construed in favor of the insured and strictly against the drafter." *Id.* (citations omitted). Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Id.*

Pursuant to the Policy, Plaintiff will pay sums that the "**insured** becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Dkt. 42, Ex. B, p. 1) (emphasis added).   Coverage is provided only to "insureds", **"with respect**

to conduct of a business of which [Anderson is] the sole owner." (Dkt. 42, Ex. B, p. 7) (emphasis

added).[6]  The parties do not suggest that this provision of the Policy is ambiguous.  In the context

of the issues and facts of record, this Court finds that it is not ambiguous.[7]

The phrase "conduct of the business" requires a focus on the purported insured's activity in

determining whether the conduct of the business owner was business or personal.  *See Linehan*, 616

N.W.2d at 919 (insured's activity which caused the injury must be one that he does in conducting

his business).  While the complaint in the underlying action alleges that Anderson provided Mercer

with alcoholic beverages as part of his compensation, the undisputed record evidence establishes

otherwise.  Mercer's undisputed testimony is that Anderson did not purchase alcohol for Mercer as

part of his compensation. (Mercer Depo., p. 15).[8]  Both men testified that the work day had ended

once they left the job site and that Mercer was not entitled to compensation thereafter.  (Anderson

Depo., p. 20; Mercer Depo., p. 10).  Anderson purchased  alcohol for Mercer after they left the job

site for the day and after he paid Mercer for that pay period.  Mercer was not required to drink with

Anderson, was not compensated for that time, and could have left Anderson's house at any time.

(Anderson Depo., p. 20; Mercer Depo., p. 15).  As noted, Anderson did not regularly meet with

employees after work. (Anderson Depo., p. 38).

Based on these undisputed facts, the act of providing alcohol to Mercer did not arise from,

_____

[6] It is undisputed that Anderson was the sole owner of J.M.A. Aluminum, Inc.

[7] While the undersigned recognizes that the inquiry of whether a provision is ambiguous is fact specific, it is notable that other courts, outside Florida, have found the phrase "with respect to the conduct of a business" unambiguous. *See e.g. Rayburn*, 624 N.W 2d at 752 (citing *Society Ins. v. Linehan*, 616 N.W.2d 918 (Wis. App. 2000)).

[8] In fact, Anderson purchased at least some of the alcohol with Mercer's money.  (Mercer Depo., p. 12)

7

relate to or further the conduct of Anderson's business. Anderson's business conduct is distinguishable from his social activities with Mercer. Simplistic as it may sound, Anderson was not in the business of providing alcohol to his employees and therefore, supplying alcohol to Mercer was not an activity Anderson performed for the purpose of his business. Rather, the evidence establishes that he purchased and drank alcohol with Mercer after work for personal purposes. Nova provided coverage only for Anderson's business, not his after hours activities unrelated to his business. The furnishing of alcohol to Mercer and drinking with him was not, therefore, activity "with respect to the conduct of [Anderson's] business" and in turn, Anderson falls outside of the Policy definition of "insured". *See Rayburn*, 624 N.W.2d at 753 (noting the important distinction between business and personal activities, the latter not falling within the "conduct of a business").

Mercer's assistance in unloading the truck does not alter this conclusion. The evidence does not support a finding that unloading the truck or socializing after hours was an established business practice of J.M.A. Aluminum, Inc. *Compare, Carroll*, 629 So. 2d at 916 (finding social entertainment was "an established business practice" of the defendant "as a means of securing and keeping customers"). The fact that the two men unloaded the truck after purchasing the alcohol does not alter Anderson's purpose in purchasing and consuming alcohol with Mercer as personal. *See Rayburn,* 624 N.W.2d at 753 (using business tools while constructing a shed did not alter the purpose of insured's activity, which was personal); *Sentry Ins. Co. v. Sahlberg*, 1995 WL 809951*3 (Mass. Super. 1995) ("accidental nexus between [insured's] use of business materials and [his] non-business purpose [voluntarily providing parts for a playground structure] does not render his activity one in 'the conduct of a business'").

If Anderson is found to have unlawfully provided alcohol to Mercer, he may have individual

liability for the death of Judith Carlson. Coverage is provided from the language of the Policy, however, and not premised on the wrongdoing of a named insured. The focus is on the conduct of the individual and whether that conduct falls within the activities for which Nova contracted to insure. Anderson's actions, however culpable, were unrelated to the conduct of his aluminum construction business. No coverage is available under Nova's CGL Policy as Anderson is not an "insured"under the plain language of the Policy. Nova has no duty to indemnify Anderson in the underlying tort action. Accordingly, as to Anderson, Plaintiff is entitled to summary judgment.

      2.    <u>Benjamin Mercer</u>

      Plaintiff argues it has no duty to defend or indemnify Mercer because Mercer was not acting within the scope of his employment or while performing duties related to the conduct of Anderson's business when the accident occurred and in turn, does not qualify as an "insured" under the Policy. This Court agrees.

      Pursuant to the Policy definition of "insured", employees are insureds "**but only for acts within the scope of their employment by [Anderson] or while performing duties related to the conduct of [Anderson's] business**." (Dkt. 42, Ex. B., p. 7) (emphasis added). Under Florida law, an employee's conduct is considered "within the scope of his employment", if (1) the conduct was the kind for which the employee was employed to perform; (2) it occurred within the time and space limits of his employment; and (3) the conduct was activated at least in part by a purpose to serve the employment. *See Spencer v. Assurance Co. Of America*, 39 F.3d 1146 (11th Cir. 1994) (citing *Morrison Motor Co. v. Manheim Services Corp.*, 346 So.2d 102 (Fla. 2d DCA 1977)).

      Mercer's act of consuming alcohol with Anderson and rear-ending Judith Carlson on his way home from Anderson's house do not meet Florida's three part test. Mercer was employed by

Anderson to work in his aluminum construction business. There is no evidence demonstrating that drinking at Anderson's house after leaving the job site was the kind of conduct Mercer was employed to perform. Secondly, the accident did not occur within the time and space limits of Mercer's employment. Anderson testified that the job ended when they left the job site. Mercer testified that he was entitled to compensation only until they "were done at the job site". Both men testified that Mercer was not required to drink alcohol with Anderson or socialize with him after they left the job site.

Finally, based upon the evidence of record, Mercer's consumption of alcohol at Anderson's house on the night of the accident did not serve Anderson's aluminum business. As discussed, neither men recalled discussing business on the night in question and it was not Anderson's practice to meet with employees after leaving the work site. Mercer was off work and free to leave at any time. These facts are distinguishable from the cases Defendant relies on in his response to Plaintiff's motion for summary judgment. For example, in *Carroll Air Systems, Inc. v. Greenbaum*, 629 So.2d 914 (Fla. 4th DCA 1994), the employee consumed alcohol at a "regional meeting of American Society of Heating, Refrigerating and Air Conditioning Engineers, Inc. . . . [which was] a three day affair where members met to discuss technical issues and vote on society officers." *Carroll*, 629 So. 2d 914, 915. In *Carroll*, the employee was "told" by his employer to attend the function because of "business benefits". *Id.* at 916.

Contrary to Defendant's contention, Mercer's assistance in unloading the truck earlier that afternoon does not create a sufficient nexus between Mercer's employment and his alleged negligent drinking and driving hours later. As discussed, the evidence does not support a finding that Mercer and Anderson's meeting and drinking that evening were for a business purpose or in furtherance of

Anderson's business. After Mercer helped unload the truck, the two men drove to pick up Mercer's paycheck from Mercer's <u>other employer</u>. (Anderson Depo., p. 16). This act was not in furtherance of Anderson's business and corresponds to a personal errand for <u>Mercer's benefit</u>. Thus, even if Mercer's assistance in unloading the truck was within the scope of his employment, there is no evidence that supports a finding that Mercer's actions thereafter, specifically, leaving Anderson's house, picking up Mercer's check from another employer and returning to Anderson's house to drink, were in furtherance of Anderson's aluminum siding business.

Where the meeting and activities engaged in by the employee are not within the business interests of the employer, a finding that the employee was within the scope of his employment when traveling to and from the meeting is not warranted. *Compare*, *Carroll*, 629 So. 2d at 916. Accordingly, Mercer's negligent driving which caused Carlson's death was not within the scope of his employment and Mercer does not fall within the Policy definition of an "insured." [9] Nova has no duty to defend or indemnify Mercer in the underlying tort action.

### Florida Statute § 627.426

Defendant contends Plaintiff should not be relieved of its duty to indenify on the ground that Anderson and Mercer are not "insureds" because Plaintiff did not disclose that particular defense in its November 5, 2002 letter denying coverage.[10] Defendant relies on Florida Statute § 627.426(2)(a).

---

[9] It is unnecessary to determine whether Exclusion (g) of the Policy excludes coverage of Mercer's actions as this Court finds Mercer does not fall within the Policy definition of "insured". Likewise, it is unnecessary to address Defendant's contention regarding the Policy's severability clause, as this Court finds that for purposes of the underlying action, neither Anderson nor Mercer fall within the Policy definition of an "insured."

[10] In its November 5, 2002 letter, Plaintiff denied coverage based on the Policy's automobile exclusion and liquor liability exclusion. (Dkt. 43, Ex. C).

In relevant part, § 627.426(2)(a) provides:

> (2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>
> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery;

Fla. Stat., § 627.426(2)(a).

In *AIU Ins. Co. v. Block Marina Investment, Inc.*, 544 So. 2d 998, 999 (Fla. 1989), the Florida Supreme Court held that the Legislature did not intend, by enacting § 627.426(2), "to give an insured coverage which is expressly excluded from the policy or to resurrect coverage under a policy or an endorsement which is no longer in effect, simply because an insurer fails to comply with the terms of the aforementioned statute." The Court interpreted the term "covered defense" to exclude a disclaimer based on a complete lack of coverage for a loss, explaining that the statute works as an estoppel and that "while the doctrine of estoppel may be used to prevent a forfeiture of insurance coverage, the doctrine may not be used to create or extend coverage." *Id.* (citations omitted).

Here, there is no coverage under the Policy because Anderson and Mercer fall outside the Policy definition of an "insured." Plaintiff's reliance on the definition of "insured" is not a "coverage defense" as interpreted by the Florida Supreme Court in *Block Marina*. To the contrary, Nova's contention is that there is no coverage under the plain language of the policy. *See Block Marina*, 544 So. 2d at 999. Plaintiff is therefore not estopped from asserting lack of coverage for failure to comply with Florida Statute § 627.426.

Accordingly, it is

12

**ORDERED AND ADJUDGED** that:

1.      Plaintiff's Motion for Summary Judgment (Dkt. 42) is **GRANTED**.  Nova Casualty Company has no duty to indemnify David Anderson and has no duty to defend or indemnify Benjamin Mercer in the underlying tort action.

2.      The Clerk is directed to close this case and deny any pending motions.

**DONE AND ORDERED** in chambers this _____7th_____ day of December, 2005.


**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

13